Mr. Chris H. Stewart, Sponsor Save our Secret Ballot in Arkansas c/o Stewart Law Firm Comcast Building 1020 West 4th Street, Suite 400 Little Rock, Arkansas 72201
Dear Mr. Stewart:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your popular name and ballot title are as follows:
Popular Name
An Amendment Concerning the Right to Vote by Secret Ballot
Ballot Title
A PROPOSED AMENDMENT TO THE ARKANSAS CONSTITUTION TO PRESERVE AND PROTECT THE FUNDAMENTAL RIGHT OF INDIVIDUALS TO VOTE BY SECRET BALLOT; THAT WHERE LOCAL, STATE, OR FEDERAL LAW REQUIRES ELECTIONS FOR PUBLIC OFFICE OR BALLOT MEASURES, OR REQUIRES DESIGNATIONS OR AUTHORIZATIONS FOR EMPLOYEE REPRESENTATION, THE RIGHT OF INDIVIDUALS TO VOTE BY SECRET BALLOT SHALL BE GUARANTEED
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects my view of the merits of the proposal. This Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434,29 S.W.3d, 669 (2000); Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119
(1996); and Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
Section 1 of your proposed measure provides:
The fundamental right of individuals to vote by secret ballot shall be preserved and protected.
It is unclear what effect, if any, the adoption of this proposition would have on existing law. Amendment 50, § 2 to the Arkansas Constitution currently provides:
All elections by the people shall be by ballot or by voting machines which insure the secrecy of individual votes.
The fundamental right of individuals to vote by secret ballot is thus already enshrined in the constitution, raising the question of how, if at all, § 1 of your proposed measure would change existing law.
Section 2 of your proposed measure provides:
Where local, state, or federal law requires elections for public office or ballot measures, or requires designations or authorizations for employee representation, the right of individuals to vote by secret ballot shall be guaranteed.
I cannot determine from the text of your measure what you mean by proposing that the right to vote by secret ballot will be guaranteed "[w]here local, state, or federal law requires . . . designations or authorizations for employee representation. . . ." Your proposed measure fails to specify what sort of "representation" is at issue or to identify the "individuals" who might participate in the election. The cryptic phrase "designations or authorizations for employee representation," which appears both in the text of your proposed measure and in the proposed ballot title itself, is unclear to the extent that I cannot summarize its significance in a revised ballot title. As this coinage appears in your proposed ballot title, I do not believe it would give a voter a fair understanding of the issues presented, as required under Hoban, supra and Becker, supra. Given that the text of your measure is materially indistinguishable from the proposed ballot title, I am unable to clarify this matter for the voters by revising your submitted ballot title.
My inquiries reveal that the unclear language discussed immediately above closely tracks that under consideration in at least five other states.[1] 58 DLR B-1, Organizing, State Secret Ballot Proposals Prompt Debate Over Preemption, Constitutionality (March 3, 2009). As discussed in the article just referenced, notwithstanding the difficulty in interpreting the meaning of the language addressed above, the proposed amendments are apparently intended to impose a requirement that private-sector employees be restricted to conducting a secret election in order to designate a union as their representative for purposes of collective bargaining. The amendment would thus foreclose any other methods of designating a collective-bargaining agent, such as majority sign-up arrangements.
Without engaging in an elaborate discussion of the issue, I will merely note that a heated debate currently exists over whether any measure of the sort you have proposed would amount to an effort to change currently applicable labor law as set forth in the National Labor Relations Act (the "NLRA"), 29 U.S.C. §§ 151-169. At the heart of this debate lies the question of whether any such state law would be preempted by the federal law. See Amalgamated Association of State, Electric Railway Motor Coach Employees v. Lockridge, 403 U.S. 274, 286
(1971) (defining the NLRA as "a comprehensive national labor law"); San Diego Building Trades Council v. Garmon, 359 U.S. 236, 239 (1959) (characterizing the NLRA as a "comprehensive regulation of industrial relations by Congress").
As noted above, a ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee, supra. In the present case, both your proposed measure and your proposed ballot title, which tracks the measure virtually verbatim, fail to disclose what can only be described as an "essential fact which would give the voter serious ground for reflection," Bailey, supra at 285 — namely, that if the amendment were indeed interpreted as designed to encroach on the federal scheme regulating labor relations, it very well may be preempted by federal law and will almost certainly result in litigation designed to resolve that issue.
In this regard, I should note that both the proposed measure and the proposed ballot title are wholly unclear as to any impact the measure will have on matters regarding labor issues. In all frankness, one could reasonably conclude that the proponents of this measure intended as much. Without presuming to comment on the constitutionality of your proposed measure — an inquiry that must be addressed, if at all, on another day and in another forum — I will simply note that this office can neither approve nor edit a ballot title that only mirrors the ambiguity contained in the proposed measure itself.
Finally, assuming the formulation discussed in items 2 and 3 above is indeed designed to restrict private-sector employees to voting secretly on the question of whether to designate a union as their representative for purposes of collective bargaining, it is far from clear that the "right" set forth in § 2 of your proposed measure achieves that restrictive end. Guaranteeing an individual the right "to vote by secret ballot" is not the equivalent of requiring an individual to do so. Indeed, within the context of elections for candidates for political offices, it is too well established to require documentation here that a voter may voluntarily waive that already existing right. Purely by way of illustration, nothing in the text of § 2 of your proposed measure would preclude certain members of a group of private-sector employees by choice from waiving their "right" to vote secretly — instead voting, say, publicly by open card vote while on coffee break, while other members of the group elected to vote by secret ballot. If you intend to foreclose that right of waiver in the context of union-labor relations regarding collective bargaining, that intention should be clearly expressed in your measure and in your ballot title. As it stands, I cannot tell whether you indeed intend to foreclose private-sector employees from decisively voicing their opinions on union-represented collective bargaining in any manner other than by secret ballot. I am consequently unable to summarize your proposed measure in a ballot title.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
Dustin McDaniel Attorney General
DM/cyh
[1] These states are Florida, Georgia, Missouri, South Carolina and Utah. The language of the various measures was reportedly proposed by the national organization "Save Our Secret Ballots" — an entity whose Arkansas branch you apparently represent.

 *Page 1